

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ASADUZ KHAN,

        Plaintiff,

v.                                        Civil Action No. 3:13cv542

**PORTFOLIO RECOVERY ASSOCIATES, LLC.,**

SERVE:   National Registered Agents, Inc.
             4701 Cox Road, Suite 301
             Glen Allen, VA 23060

**EQUIFAX INFORMATION SERVICES, LLC.,**

SERVE:   Corporation Service Company, Registered Agent
             Bank of America Center, 16th Floor
             1111 East Main Street
             Richmond, VA 23219,

**EXPERIAN INFORMATION SOLUTIONS, INC.**

SERVE:   David N. Anthony, Registered Agent
             1001 Haxall Point
             Richmond, VA 23219

**TRANS UNION, LLC.**

SERVE:   Corporation Service Company, Registered Agent
             Bank of America Center, 16th Floor
             1111 East Main Street
             Richmond, VA 23219,

        Defendants.

## COMPLAINT

COMES NOW the Plaintiff, **ASADUZ KHAN** (hereafter the "Plaintiff"), by counsel, and for his Complaint against the Defendants, he alleges as follows:

## PRELIMINARY STATEMENT

1. This action is brought for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Federal Fair Credit Reporting Act (FCRA) 15 U.S.C. 1681 et. seq. and the common law tort of defamation.

## JURISDICTION

2. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p. Venue is proper as Defendants maintain their registered offices within the boundaries for the Eastern District of Virginia, Richmond Division and significant parts of the Plaintiff's claim occurred in Virginia.

## PARTIES

3. The Plaintiff, **ASADUZ KHAN**, is a natural person and resident of Virginia. Plaintiff, at all times relevant hereto was a "consumer" and "person" protected by the FCRA.

4. Upon information and belief, Defendant, **PORTFOLIO RECOVERY ASSOCIATES, LLC**, (hereinafter "*Portfolio*") is a limited liability company doing business in the State of Virginia through its registered offices in Glen Allen Virginia, as a debt collector and "furnisher" as governed by the FCRA.

5. Upon information and belief, **EQUIFAX INFORMATION SERVICES, LLC.** ("*Equifax*") is a corporation authorized to do business in the State of Virginia through its registered offices in Richmond, Virginia.

6. Upon information and belief, *Equifax* is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f). Upon information and belief, *Equifax* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

7. Upon information and belief, *Equifax* disburses such consumer reports to third

parties under contract for monetary compensation.

8. Upon information and belief, **EXPERIAN INFORMATION SOLUTIONS, INC.** ("*Experian*") is a corporation authorized to do business in the State of Virginia through its registered agent office.

9. Upon information and belief, *Experian* is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f). Upon information and belief, *Experian* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

10. Upon information and belief, *Experian* disburses such consumer reports to third parties under contract for monetary compensation.

11. Upon information and belief, **TRANS UNION, LLC.** ("*Trans Union*") is a corporation authorized to do business in the State of Virginia through its registered offices in Richmond, Virginia.

12. Upon information and belief, *Trans Union* is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f). Upon information and belief, *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

13. Upon information and belief, *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

14. In December 2011, Plaintiff learned through a credit monitoring e-mail that his credit score had changed. Upon further investigation, Mr. Khan learned that a collection account with *Portfolio* was reporting in his credit files. The underlying account was a Capital One account.

15. Mr. Khan contacted *Portfolio* directly in December 2011 to dispute the collection account and advised *Portfolio* that it was not his debt. Mr. Khan further advised that the underlying Capital One Account was a former corporate account in the name of Bangalee, Inc., for which he was not personally liable. Mr. Khan advised the *Portfolio* representative that the corporation, Bangalee, Inc. previously filed bankruptcy and that the Capital One corporate debt was included in this filing.

16. Mr. Khan made multiple additional disputes directly to *Portfolio* to no avail.

17. Thereafter Plaintiff obtained a copy of his consumer credit report with *Equifax, Experian and Trans Union* and learned that each were reporting a *Portfolio* collection debt in an amount in excess of $21,000.00 *(the Portfolio Reporting)*.

18. The *Portfolio* Reporting was inaccurate. The Plaintiff was never personally liable for the repayment of this corporate debt.

19. Plaintiff has disputed the *Portfolio* collection account with *Equifax* and/or other Consumer Reporting Agencies multiple times since March 2012.

20. On or about March 28, 2012, Equifax responded to Mr. Khan's dispute and advised that it had verified that the *Portfolio* account belonged to him and that additional information had been provided from the original source regarding this item. The *Portfolio* collection account was reporting derogatorily as $21,909 past due.

21. On or about April 20, 2012, Plaintiff disputed the *Portfolio* collection account directly with *Equifax, Experian* and *Trans Union*. Plaintiff advised that the underlying Capital One account had been opened by business in which he was involved, Bangalee, Inc. Plaintiff advised that he did not authorize his name to be placed on these accounts, that he did not agree to be personally liable and that he was only an authorized user. Plaintiff further advised that Bangalee, Inc. closed its business in 2006 and filed for Bankruptcy, wherein the debts were

4

subsequently paid or discharged.

22. On or about May 8, 2012 *Experian* responded to Mr. Khan's dispute and advised that it was responding to a request to verify items on his credit report, however, it had already investigated the information and the credit grantor had verified its accuracy. Mr. Khan also received a Correction Summary dated May 8, 2012 that advised that the other items he disputed were not currently reporting on his credit report. However, the *Portfolio* account was in fact, still reporting as a past due collection account in the amount of $21,946.00

23. On or about May 12, 2012, *Trans Union* responded to Mr. Khan's dispute with its dispute results. *Trans Union* advised Mr. Khan that *Portfolio* had verified the account. The account was reporting as a past due collection account in the amount of $21,978.00. The account also reflected a notation that the dispute had been resolved, but the customer disagreed.

24. On or about May 17, 2012 *Equifax* forwarded its Results of Reinvestigation. *Equifax* advised Mr. Khan that it had verified that the *Portfolio* account belonged to him and that additional information had been provided from the creditor. The *Portfolio* account was still reporting as a past due collection account in the amount of $21,988.00. The account also included a notation that that the customer disputes after resolution.

25. On or about May 25, 2012, Mr. Khan forwarded a second very detailed dispute letter to *Equifax, Experian* and *Trans Union* again disputing the reporting of the *Portfolio* collection account.

26. On or about June 2, 2012, *Trans Union* forwarded its Investigation Results to Mr. Khan that advised that the *Portfolio* account had been verified as reporting accurately. The account was reporting as a past due collection account in the amount of $21,990.00.

27. On or about June 14, 2012, *Equifax* forwarded its Results of Reinvestigation to

Mr. Khan that advised that it had again verified that the *Portfolio* account belonged to him and that additional information had been provided by the creditor. The account was now reporting as a past due collection account in the amount of $22,988.00. The account also included a notation that the Consumer Disputes after resolution.

28. On or about June 16, 2012, *Experian* forwarded its Correction Summary to Mr. Khan that advised that the *Portfolio* account had been deleted from his credit report.

29. On or about June 16, 2012 *Trans Union* forwarded its second Investigation Results to Mr. Khan that advised that new information had been provided from *Portfolio*. The *Portfolio* account had been verified as of June 15, 2012 as a past due collection account in the amount of $22,033.00. The account now included a notation "Dispute Resolved – Cust Disagrees".

30. *Equifax, Experian and Trans Union* each received, but ignored Mr. Khan's disputes and did refuse to delete or correct the inaccurate information regarding the derogatory account from Mr. Khan's credit file.

31. *Equifax, Experian and Trans Union* each had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the derogatory accounts.

32. After receiving Mr. Khan's notice of the inaccuracy and since on or about March 2012, *Equifax, Experian* and *Trans Union* prepared and published to third parties multiple inaccurate consumer reports about Mr. Khan that contained the inaccurate derogatory *Portfolio* collection account.

33. *Equifax, Experian and Trans Union* received Mr. Khan's numerous disputes, but in each case wholly and entirely failed to conduct the reinvestigations required by law.

Instead, *Equifax, Experian and Trans Union* merely "parroted" the information dictated to it by *Portfolio*.

34. Upon information and belief, Mr. Khan alleges that on one or more occasions *Equifax, Experian and Trans Union* forwarded Mr. Khan's disputes to *Portfolio*. Upon information and belief, *Portfolio* was provided notice of Mr. Khan's disputes and despite this notice, failed and refused to investigate and correct its inaccurate reporting.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681e(b)
### (EQUIFAX, EXPERIAN and TRANS UNION)

35. Mr. Khan realleges and incorporates paragraphs 1 through 34 above as if fully set out herein.

36. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Mr. Khan's credit reports and credit files they published and maintained concerning Mr. Khan.

37. As a result of the conduct, actions and inactions of *Equifax, Experian* and *Trans Union* Mr. Khan suffered actual damages including without limitation, by example only and as described herein on Mr. Khan's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

38. *Equifax, Experian* and *Trans Union*'s conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Mr. Khan to recover under 15 U.S.C. §1681o.

39. Mr. Khan is entitled to recover actual damages, statutory damages, costs and

attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(1)
### (EQUIFAX, EXPERIAN and TRANS UNION)

40. Mr. Khan realleges and incorporates paragraphs 1 through 39 above as if fully set out herein.

41. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Mr. Khan's credit file.

42. As a result of the conduct, actions and inactions of *Equifax, Experian* and *Trans Union* Mr. Khan suffered actual damages including without limitation, by example only and as described herein on Mr. Khan's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

43. *Equifax, Experian* and *Trans Union*'s conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Mr. Khan to recover under 15 U.S.C. §1681o.

44. Mr. Khan is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(2)
### (EQUIFAX, EXPERIAN and TRANS UNION)

45. Mr. Khan realleges and incorporates paragraphs 1 through 44 above as if fully set out herein.

46. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide lawful notification of Ms. Khan's dispute to *Portfolio* and by failing to include all relevant information regarding Mr. Khan's disputes.

47. As a result of the conduct, actions and inactions of Defendants, *Equifax, Experian* and *Trans Union,* the Mr. Khan suffered actual damages including without limitation, by example only and as described herein on Mr. Khan's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

48. *Equifax, Experian* and *Trans Union's* conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Mr. Khan to recover under 15 U.S.C. §1681o.

49. Mr. Khan is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(4)
### (EQUIFAX, EXPERIAN and TRANS UNION)

50. Mr. Khan realleges and incorporates paragraphs 1 through 49 above as if fully set out herein.

51. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Mr. Khan.

52. As a result of the conduct, actions and inactions of ***Equifax, Experian*** and ***Trans Union***, Mr. Khan suffered actual damages including without limitation, by example only and as described herein on Mr. Khan's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

53. ***Equifax, Experian*** and ***Trans Union***'s conduct, actions and inactions were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, ***Equifax, Experian*** and ***Trans Union*** were negligent entitling Mr. Khan to recover under 15 U.S.C. §1681o.

54. Mr. Khan is entitled to recover actual damages, statutory damages, costs and attorney's fees from ***Equifax, Experian*** and ***Trans Union*** in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681i(a)(5)(A)**
**(EQUIFAX, EXPERIAN and TRANS UNION)**

55. Mr. Khan realleges and incorporates paragraphs 1 through 54 above as if fully set out herein.

56. ***Equifax, Experian*** and ***Trans Union*** each violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate item of information from Mr. Khan's credit file or modify the item of information upon a lawful reinvestigation.

57. As a result of the conduct, actions and inactions of ***Equifax, Experian*** and ***Trans Union***, Mr. Khan suffered actual damages including without limitation, by example only and as described herein on Mr. Khan's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

58. ***Equifax, Experian*** and ***Trans Union***'s conduct, actions and inactions were

willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Mr. Khan to recover under 15 U.S.C. §1681o.

59. Mr. Khan is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b) (1)(A)
### (PORTFOLIO)

60. Mr. Khan realleges and incorporates paragraphs 1 through 59 above as if fully set out herein.

61. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, *Bank of America* violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Mr. Khan's disputes.

62. When Mr. Khan mailed his disputes to the consumer reporting agencies, they use a dispute system named "e-Oscar", which has been adopted by the credit reporting agencies and their furnisher customers such as *Portfolio*. It is an automated system and the procedures used by the CRA's are systemic and uniform.

63. When *Equifax, Experian* and *Trans Union* receive a consumer dispute, it (usually via an Indian outsource vendor), translates that dispute into an "ACDV" form.

64. The ACDV form is the method by which *Portfolio* has elected to receive consumer disputes pursuant to 15 U.S.C. §1681i(1).

65. It is extremely rare – certainly less than 1% of the time – that *Portfolio* will receive a consumer's dispute sent through the CRA's other than through the e-Oscar system.

66. On information and belief, Mr. Khan alleges that to date *Portfolio* has never complained to the CRA's about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

67. When *Portfolio* receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

68. Based on the manner in which *Equifax, Experian* and *Trans Union* responded to Mr. Khan's disputes, representing that *Portfolio* had "verified" the supposed accuracy of its reporting, Mr. Khan alleges that *Equifax, Experian* and *Trans Union* did in fact forward Mr. Khan's dispute via an ACDV to *Portfolio*.

69. *Portfolio* understood the nature of Mr. Khan's dispute when it received the ACDV from *Equifax, Experian* and *Trans Union*.

70. When *Portfolio* received the ACDV from *Experian, Equifax* and *Trans Union* each as well could have reviewed its own system and determined that Mr. Khan was not a personal guarantor on the underlying debt it was trying to collect.

71. Notwithstanding the above, *Portfolio* followed a standard and systemically unlawful process when they received the ACDV dispute. Basically, all *Portfolio* does is review their own internal computer screen for the account and repeat back to the ACDV system the same information *Portfolio* had already reported to the CRAs.

72. When *Portfolio* receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

73. As a result of *Portfolio's* violations of 15 U.S.C. §1681s-2(b)(1)(A), Mr. Khan suffered actual damages, including but not limited to: loss of credit, damage to reputation,

embarrassment, humiliation and other mental and emotional distress.

74. The violations by *Portfolio* were willful, rendering *Portfolio* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

75. The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

74. *Portfolio* was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Mr. Khan's dispute.

76. *Portfolio* has been sued numerous times for its alleged failures to conduct lawful FCRA investigations.

77. On information and belief, Mr. Khan alleges that the procedures followed regarding his FCRA disputes through e-Oscar were the procedures that *Portfolio* intended their employees or agents to follow.

78. On information and belief, Mr. Khan alleges that *Portfolio*'s employees or agents did not make a mistake (in the way in which he or she followed *Portfolio*'s procedures) when he or she received, processed and responded to the *Equifax, Experian* and *Trans Union* ACDVs.

79. On information and belief, Mr. Khan alleges that *Portfolio* have not materially changed its FCRA investigation procedures after learning of their failures in this case.

80. In the alternative, *Portfolio* was negligent, which entitles Mr. Khan to recovery under 15 U.S.C. §1681o.

81. Mr. Khan is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Portfolio* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681s-2(b)(1)(B)
## (PORTFOLIO)

82. Mr. Khan realleges and incorporates all other factual allegations set forth in the Complaint (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

83. On one or more occasions within the past two years, by example only and without limitation *Portfolio* violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

84. As Mr. Khan detailed in Count Six, *Portfolio* has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

85. *Portfolio* is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar

86. *Portfolio* does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

87. As a result of *Portfolio's* violations of 15 U.S.C. §1681s-2(b)(1)(B), Mr. Khan suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

88. The violations by *Portfolio* were willful, rendering *Portfolio* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Portfolio* was negligent, which entitles Mr. Khan to recovery under 15 U.S.C. §1681o.

89. Mr. Khan is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Portfolio* in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n and §1681o.

## COUNT EIGHT: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681s-2(b) (1)(C) and (D)
## (PORTFOLIO)

90. Mr. Khan realleges and incorporates all other factual allegations set forth in the Complaint. (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

91. On one or more occasions within the past two years, by example only and without limitation, *Portfolio* violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the *Portfolio* representations within Mr. Khan's credit files with the CRAs without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

92. Specifically, *Portfolio* failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to *Experian, Equifax* and *Trans Union*.

93. On information and belief, Mr. Khan alleges that *Portfolio* rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

94. Mr. Khan's dispute was, at a minimum, bone fide.

95. As a result of *Portfolio's* violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Mr. Khan suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

96. The violations by *Portfolio* were willful, rendering *Portfolio* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

97. *Portfolio* was aware of the *Saunders v. B.B.&T* FCRA decision by the Fourth

Circuit when they followed the ACDV procedures used regarding Mr. Khan's dispute.

98. On information and belief, the Mr. Khan alleges that the procedures followed regarding Mr. Khan's FCRA disputes through e-Oscar were the procedures that *Portfolio* intended their employees or agents to follow.

99. On information and belief, the Mr. Khan alleges that *Portfolio*'s employees or agents did not make a mistake (in the way in which he or she followed *Portfolio*'s procedures) when he or she received, processed and responded to the *Experian, Equifax* and *Trans Union's* ACDVs and did not include the XB code in the CCC field.

100. On information and belief, Mr. Khan alleges that *Portfolio* has not materially changed their FCRA investigation procedures regarding the CCC field in ACDVs after learning of their failures in this case.

101. In the alternative, *Portfolio* was negligent, which entitles Mr. Khan to recovery under 15 U.S.C. §1681o.

102. Mr. Khan is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Portfolio* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT NINE: DEFAMATION
### (PORTFOLIO)

103. Mr. Khan repeats and re-alleges every allegation above as if set forth herein in full.

104. Within the context of the allegations in Count Nine, *Portfolio* did not act as a consumer reporting agency nor a user of Mr. Khan's consumer report. *Portfolio* did not use his consumer report or take adverse action based on the report.

105. In addition to its violations of the Fair Credit Reporting Act, *Portfolio* made

multiple false and defamatory statements that are not governed by 15 U.S.C. §1681s-2. ***Portfolio*** published the false statements that Mr. Khan was legally responsible for a collection debt to the credit reporting agencies and through the credit reporting agencies to all of Mr. Khan's potential lenders on multiple occasions.

106. These false and defamatory statements were made with legal malice and a wilful intent to injure Mr. Khan by placing derogatory information in his credit reports. ***Portfolio*** had reason to know, both by virtue of information communicated to it by Mr. Khan and by its own records, that Mr. Khan was not personally responsible for the collection debt it was trying to collect. Further, ***Portfolio*** wilfully adopted procedures that wholly ignored the demands of Mr. Khan, and other consumers generally, that inaccurate information should be removed from their credit files.

107. As a result of ***Portfolio***'s conduct, actions and inaction, Mr. Khan suffered various types of damage as set forth herein, including specifically, loss of credit, the loss of the ability to purchase and benefit from a line of credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

108. These defamations were malicious, wilful, deliberate, intentional and/or with reckless disregard for the interests and rights of Mr. Khan, so as to justify an award of punitive damages against ***Portfolio*** in an amount to be determined by the Court.

WHEREFORE Mr. Khan demands judgment for compensatory and statutory damages against the Defendants, jointly and severally; for his attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**ASADUZ KHAN**

By: _____
     Of Counsel

THOMAS R. BREEDEN
THOMAS R. BREEDEN, P.C.
10326 Lomond Drive
Manassas, VA 20109
(703) 361-9277 – Telephone
(703) 257-2259 – Facsimile
E-mail: trb@tbreedenlaw.com

LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail: lenbennett@clalegal.com

SUSAN M. ROTKIS, VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail: srotkis@clalegal.com

*Counsel for Plaintiff*